UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ONEWEST BANK, N.A.,

                   Plaintiff,

        -against-

NECHUMA SIMON, AARON SIMON, DISCOVER
BANK, NEW YORK CITY PARKING VIOLATIONS
BUREAU, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD, STERLING PRODUCTS, INC.,
CENOBIO CORTES, DIANA MADERO, CHARRA
GOMEZ, SYLIVA BAEZ, MIRAM MUNOZ, and
JOHN DOE(s),

                   Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

14 CV 6622 (RJD)

DEARIE, District Judge

     Before the Court in this mortgage foreclosure action are plaintiff's motion for summary judgment on its foreclosure claim against defendants Nechuma Simon and Aaron Simon, and the Simons' cross-motion for summary judgment dismissing the suit.

     As the parties are aware, in connection with plaintiff's earlier motion for a default judgment, Magistrate Judge Cheryl Pollack issued a comprehensive, 28-page Report and Recommendation in February 2016 (the "Report" or "R&R") recommending that a judgement of foreclosure and sale be entered against defendant Nechuma Simon, the sole obligor under the relevant instruments, and that plaintiff be awarded damages in excess of $467,000, which includes unpaid principal in excess of $260,000 and interest in excess of $155,000 plus pre-acceleration late charges, tax disbursements and other costs to preserve the property. ECF Doc. 38 at 16 et seq. Except where otherwise noted, all references here to the parties and documents follow the labelling nomenclature used in the R&R.

As the R&R states, Magistrate Pollack reviewed not merely the pleadings but the several hundred pages of underlying documents and additional materials submitted at her direction after an inquest, including, *inter alia*: (i) copies of the Note and the Mortgage; (ii) the subsequent two assignments of the Mortgage and recording thereof; (iii) the notice of default sent to Nechuma and proof of mailing to both addresses of record; (iv) the 90-day pre-foreclosure notices sent to Nechuma, proof of certified mailing, and proof of subsequent filing with the State of New York, all as required by New York law, see N.Y. Real Prop. Actions & Proc. L. ("RPAPL") §§ 1304, 1306; (v) the affidavits of two of plaintiff's record custodians explaining the loss of the original Note; and (vi) counsel's Certificate of Merit, also required by New York law, attesting in substance that, based upon a review of the records, there is a reasonable basis for the commencement of the suit and that plaintiff is the creditor entitled to enforce rights under referenced documents. N.Y. Civ. Prac. L.& R. ("CPLR") § 3012-b; see ECF No. 95-1 ("Affirmation of Regularity" and accompanying exhibits).[1]

As will be discussed, the principal change in the record now, three years after the R&R, is that Nechuma (the sole obligor) and her husband Aaron (the owner of the Property) have appeared, and Nechuma's default on her financial obligations is an admitted fact. Beyond that, the Simons have interposed the standard affirmative defenses available under New York law to defaulting mortgagors—including standing, statute of limitations, and notice, which are the principal issues presented by the parties' motions. Here, however, as will be discussed, those defenses are essentially jurisprudential red herrings that do not disturb the basic correctness of Magistrate Pollack's view of the facts in this case. Accordingly, the Court grants the plaintiff's

---

[1] Many of the relevant documents have been filed multiple times; hence, some of the referenced materials also appear in other ECF entries.

motion for summary judgment on the claim for foreclosure against Nechuma and denies the cross-motion for summary judgment on all grounds. Additionally, given the passage of time since the matter was before Magistrate Pollack and the incompleteness of the parties' briefing on certain collateral issues, the Court respectfully refers the matter to Magistrate Verà Scanlon (to whom the case is currently assigned) for an updated report and recommendation on (i) the appointing of a referee to conduct the sale of the Property under the procedures described in the plaintiff's Proposed Judgment of Foreclosure and Sale, and (ii) the questions of damages and attorneys' fees, if any.

## RELEVANT FACTS

On April 16, 2016, ten weeks after the R&R was issued, the Simons (but none of the other named defendants) appeared in the action. ECF Doc. 51. Five months later, in September 2016, the Simons moved to vacate the default and to dismiss for insufficient service of process. ECF Nos. 59, 60. By a Court-approved stipulation dated December 28, 2016, the parties agreed to the withdrawal of both plaintiff's motion for default and the Simons' motion to dismiss. ECF No. 65. Plaintiff also accepted the late filing of the Simons' answer, and the Simons waived any defense based on personal jurisdiction. Id.

Plaintiff now moves for summary judgment against both Nechuma and Aaron Simon striking the standing, limitations, notice and CPLR § 3217(c) defenses and for entry of a judgment of foreclosure, while the Simons oppose the motion and cross-move for summary judgment in their favor on the basis of each of the four defenses.

**The Mortgage, the Note and Assignments**

It is undisputed that on September 23, 1998, Nechuma obtained the Loan from First Financial Equities, Inc. in the original principal amount of $296,000.00, memorialized in a Note

3

dated September 23, 1998, with the first payment due November 1, 1998 and a maturity date of October 1, 2028. The Note was secured by a Mortgage that Nechuma executed on September 23, 1998 on the Property located at 255 Lynch Street, Brooklyn, NY 11206. The Mortgage was duly recorded in the Office of the County Clerk of Kings County, New York, in October 1999 at Reel Number 4635 Page Number 1983.[2]

The apparent reason for naming Aaron Simon a defendant is that approximately five years after Nechuma executed the Note and Mortgage, on or about November 14, 2003, she transferred the Property to Aaron through a bargain and sale deed. Nechuma did not assign Aaron the Mortgage, however, and in the motion papers she also admits that while Aaron is record owner of the Property she remains the sole obligor on the debt reflected in the Note and Mortgage.

The Mortgage was eventually assigned, twice, in the secondary market. On or about November 7, 2006, the original lender (First Financial Equities, Inc.) assigned the Mortgage, "together with . . . the note or obligation described in said mortgage," to IndyMac Bank, F.S.B ("IndyMac"). On or about May 28, 2010, Federal Deposit Insurance Corporation as receiver for

---

[2] The documents in the record speak for themselves. Additionally, Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1, ECF Doc. No. 95-3, and Defendants' Counterstatement of Material Facts Pursuant to Local Rule 56.1, ECF Doc. No. 95-5, agree on these basic transactional facts.

IndyMac assigned the Mortgage and note to the plaintiff, OneWest Bank, F.S.B. ("OneWest").[3] At the time of the transfer to plaintiff, the Note had not been satisfied.[4]

Central to one branch of the motions is the undisputed fact that plaintiff is not in possession of the *original* Note.  As noted, copies abound in the parties' submissions, so there is no dispute as to the instrument's contents or signatories.  Plaintiff's position, as detailed in two record-custodian statements addressing the situation, is that the original Note was inadvertently lost.  The first statement, bearing the label "Lost Note Affidavit," comes from Wendy Traxler, First Vice President of OneWest, sworn to January 2, 2014.  ECF Doc. No. 26 at 11-14.  Traxler first lays a foundation by attesting, inter alia, that in her capacity as First Vice President she is "[f]amiliar with the circumstances surrounding the preparation [and] maintenance of records by OneWest for the purpose of servicing mortgage loans," and further attests that the Note "has been inadvertently lost, misplaced or destroyed."  Id. at 13.  Additionally, Traxler attests that OneWest "is the record owner and intended holder of the Note;" that OneWest "has not pledged, assigned, transferred, hypothecated or otherwise disposed of" the Note; and that it "has not lost or destroyed the original Note in bad faith."  Id.  Finally, Traxler attests that OneWest "has made a diligent and extensive search of its records in an effort to recover the lost Note without success."  Id. at 14.

---

[3] Although there has been no application to amend the caption, plaintiff's motion papers appear to document a series of name changes: see, ECF No. 26 (refers to plaintiff as "OneWest Bank, N.A...formerly known as OneWest Bank, F.S.B.,", and ECF No. 95-1 at 7 (refers to plaintiff as "CIT Bank, N.A., formerly known as OneWest Bank N.A").

[4] Once again, the documents in the record speak for themselves.  Plaintiff does not detail the assignments in its 56.1 statement, however, so there is no formal "admission" by defendants in either of their 56.1 counter-statements.  But there is no genuine basis to dispute these facts. What defendants challenge, as will be discussed, is the legal import of the assignments.

The other statement addressing the original Note's disappearance is the affidavit of JC San Pedro, a director and authorized signatory of the plaintiff, sworn to on December 2, 2015 (hereinafter, the "Second San Pedro Affidavit").[5] ECF No. 37-2, 97-12. San Pedro attests that in the regular performance of his job functions, he is familiar with the business records plaintiff maintains for the purpose of servicing mortgage loans. Id. at 1. He also attests that these records are contemporaneous records prepared (or with information provided) by persons with knowledge of the activity and transactions reflected in the records, and that they are kept in the ordinary course of plaintiff's business activity. San Pedro also attests that in connection with making the affidavit submitted here, he acquired first-hand knowledge by personally examining the relevant records. Id. at 2. As for the Note itself, San Pedro also attests that it "has been inadvertently lost, misplaced or destroyed," and that, upon review and search of the plaintiff's business records, he believes that "the [ ] Note was lost in or about April of 1999 while the Note was being shipped to a custodian at the time, State Street Bank." Id. He further reports that, "[i]n or about November of 2005, State Street Bank confirmed that they did not have the original Note." Id. Finally, San Pedro confirms that Plaintiff "never received the original Note." Id.[6]

---

[5] As noted, numerous documents have been filed multiple times, for example, initially in support of the motion for default, then later as part of the plaintiff's motion for summary judgment, and again as an exhibit in the defendants' cross-motion. With respect to Mr. San Pedro, however, although the naming of the documents offered the Court no guidance whatsoever on the matter, it turns out that he submitted two different affidavits. They are not in conflict but rather address different features of the record. The other, sworn to earlier in time, on May 27, 2015 (hence, the "First San Pedro Affidavit"), ECF Doc 26, is discussed *infra* in the context of the issue of notice.
[6] Curiously, San Pedro states that Plaintiff "acquired interest in the Note March 19, 2009," ECF No. 37-2 at 2, whereas the written assignment of the Mortgage and Note from the FDIC as receiver for IndyMac to Plaintiff, according to Plaintiff's own submissions, did not occur until May 28, 2010. ECF No. 37-1 at 36-8. This discrepancy is not material in that, in either event, plaintiff had interest in the Note long before commencing this action.

Although the Simons argue about the legal significance of the Note's absence, they offer

no factual or legal grounds for doubting or disputing the Traxler and San Pedro affidavits.

**The Default**

The question of whether and when Nechuma defaulted under the terms of the Note and

Mortgage is a disturbing feature of the record. Plaintiff's pleading alleges as follows: "Nechuma

Simon failed to make payment in accordance with the terms of the note and mortgage by not

making the payment due on February 1, 2009 and subsequent payments. Accordingly, Plaintiff

hereby accelerates the payments and declares due the entire amount owed on the note and

secured by the mortgage." ECF No. 10 (Amended Complaint, ¶ 23). The Simons' Answer

simply denies this allegation. See ECF No. 66 (Answer of Nechuma and Aaron Simon dated

January 17, 2017).

In the motion papers, Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1

states, in pertinent part, that, "[t]here is in fact a default under the terms and conditions of the

Promissory Note and Mortgage because the February 1, 2009 and subsequent payments were not

made." ECF No. 95-3, ¶5. In support are two record-custodian affidavits that, after laying the

requisite foundation, specifically attest that plaintiff's records show that Nechuma defaulted on

February 1, 2009 by failing to tender the monthly installment due that day. See First San Pedro

Affidavit, ECF No. 26 at ¶ 9 and Affidavit of Caryn Edwards, Assistant Secretary of plaintiff's

successor, CIT Bank, N.A., ECF No. 95-1 at ¶ 6.[7]

---

[7] By way of foundation, Edwards attests, *inter alia*, that in the regular performance of her job
functions, she is familiar with the business records the bank maintains for the servicing of
mortgage loans; that she has "personal knowledge" of the operation and circumstances
surrounding the preparation, maintenance, distribution and retrieval of these records; that such
records are made at or near the time by, or from information provided by, persons with
knowledge of the activity and transactions reflected in such records, and that these records are
kept in the course of the bank's regularly conducted business activity. She also attests that she

The Simons' Counter-Statement of Material Facts Pursuant to Local Rule 56.1—which is dated January 26, 2018, signed by counsel, and filed as part of plaintiff's bundle on March 16, 2018—does not dispute this fact. ECF No. 95-5. The Simons, however, also filed an Amended Counter-Statement of Material Facts Pursuant to Local Rule 56.1. See ECF No. 98-3. This document is dated March 14, 2018 (ten weeks after the initial statement) but was filed on the same day as plaintiff's bundle, March 16, 2018. The Simons did not seek leave of Court or the consent of their adversary to file the Amended 56.1 Counter-Statement, nor did they address in a covering letter or affirmation of counsel the reason for the amendment, and plaintiff has not moved to strike the document. In any event, the Amended 56.1 Counter-Statement states as follows: "Defendants dispute the default date as February 1, 2009 since the first foreclosure action was commenced on August 22, 2006 which stated …that the default occurred on August 1, 2005." ECF Doc. 98-3 at ¶ 5a.

The "first foreclosure action" referenced in the Amended 56.1 Counter-Statement is a foreclosure action against the Simons commenced by plaintiff's predecessor-in-interest, Indy Mac Bank, on or about August 22, 2006 in Kings County Supreme Court, Index Number 25179/062006, on the basis of an earlier default by Nechuma under the Mortgage and Note (the "2006 Action"). See ECF No. 97-5. That action was voluntarily discontinued by stipulation signed by both parties on or about June 29, 2007. ECF No. 97-6. The relevant discontinuance materials include a document titled "Discontinuance of Foreclosure Action" signed by counsel for IndyMac and counsel for the defendants and bearing a court stamp stating, "Kings County Supreme Court Motion Support Approved," with a payment stamp stating, "Voluntary

---

"acquired personal knowledge of the matters" she is about to describe "by examining the business records" relating to the Note and Mortgage. Id. at ¶ 2. San Pedro attests similarly. ECF Doc. 26 at ¶¶ 1-2.

Discontinuance." That form is accompanied by an "Attorneys[sic] Affirmation in Support," prepared by counsel for IndyMac, which states, inter alia, that all of the necessary defendants had been served and that none had appeared or answered. Id.

As will be discussed further *infra*, the statute-of-limitations branch of the motion and cross-motion arise out of the commencement of that 2006 Action, which the parties agree accelerated the mortgage debt and started the six-year limitations clock; they disagree, however, about whether the voluntary discontinuance served to *stop* the clock. The Court believes the Simons' tinkering of their position with respect to the date of the default reflects their effort to bolster their statute of limitations defense—specifically, by conforming the facts to a particular argument fleshed out in the supplemental memorandum that they filed along with the Amended 56.1 Counter-Statement—all to be discussed more fully *infra* at pp. 18 *et seq*. The content of the altered averment is also disingenuous, as certainly Nechuma knows whether and when she made mortgage payments. At a minimum, though, for purposes of determining whether plaintiff has established its prima facie case for foreclosure, the Court finds that even the Amended 56.1 Counter-Statement does *not* dispute that Nechuma is in fact in default on her financial obligation under the Note and Mortgage.[8]

**Requisite Pre-Foreclosure Notice**

---

[8] Local Rule 56.1(a) requires that a party moving for summary judgment "annex[ ] to [its] notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Courts are generally flexible with respect to enforcement of the rule. See generally Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); Lighton Industries, Inc. v. Allied World National Assurance Company, 348 F. Supp. 3d 167, 186, 197 (E.D.N.Y. 2018) (denying motion to strike summary judgment movant's Amended 56.1 statement, filed with its reply papers, where, inter alia, opponent addressed same matters in its 56.1 statement and was not prejudiced). The Court's concern is not with the fact of the amendment but instead, as discussed *infra*, with the document's content, timing, and lack of explanatory affirmation.

Under the terms of the Mortgage, when a default occurs, the holder of the Mortgage may send notice of the default to the borrower and may accelerate the loan; if the borrower does not make timely payment of the arrears, the holder of the Mortgage may seek to recover the entire principal amount plus outstanding accrued interest. Note, ¶6(C); Mortgage ¶¶ 21 (A)-(C)).

As proof that the required notices were sent, plaintiff offers as part of its summary judgment motion papers the affidavit of Caryn Edwards (as noted, she is an Assistant Secretary of plaintiff's successor, CIT Bank, N.A). See ECF Doc. 95-1.[9] After laying the requisite record-custodian foundation, see note 7 *supra,* Edwards specifically "certifies and attests" that a notice of default in compliance with the terms of the Mortgage "was sent" to Nechuma, both at the address of the Property (225 Lynch Street, Brooklyn) and her last known mailing address, 543 Bedford Avenue Brooklyn, on June 17, 2014, by first class mail. Id. at ¶ 9. Edwards also "certifies and attests" that the 90-day pre-foreclosure notice required by RPAPL § 1304 "was sent" to Nechuma via first class and certified mail to both the Lynch Street and Bedford Avenue addresses, id. at ¶7, and that the 90-day notice was subsequently filed electronically with the New York State Superintendent of Financial Services.[10] Edwards furnishes the confirmation number of the filing with New York State, and states that she has attached to her affidavit copies of the notices sent and proof of the mailing, but the version of the affidavit in the Court's hands has no such exhibits.

---

[9] Again, this document appears to have been filed multiple times and appears in several ECF entries. The Court has not compared them verbatim but assumes they are in fact copies of the same document and not subsequent or amended statements by the same affiant.

[10] The statute requires that, at least 90 days before commencing legal action against a mortgagor, a lender must give notice that states, *inter alia*, that the borrower's home loan is in default, that specifies the amount, and that the borrower is "at risk of losing [his] home." RPAPL §1304.

Copies of the notices and proof of mailing do appear, however, as attachments to the other affidavit of JC San Pedro, sworn to May 27, 2015 and buried amid the plaintiff's motion papers for default (the "First San Pedro Affidavit"), ECF Doc. 26. San Pedro attests similarly to Edwards with respect to the mailing of both the notice of default required by the mortgage and the 90-day pre-foreclosure notice; San Pedro, however, *does* attach copies of the notices themselves and proofs of the mailings described. See ECF Doc. 26 at pp. 41-52.

The Simons' Counter-Statement of Material Facts Pursuant to Local 56.1 sensibly admits that the required notices were sent to Nechuma, ECF No. 95-5 at ¶¶ 6-8, while their unexplained Amended 56.1 Counter-Statement denies the same. ECF No. 98-3 at ¶¶ 6-8. In an affidavit submitted in support of the cross-motion, however, Nechuma states: "this Plaintiff claim[s] that they [sic] served me with a pre-requisite 90[-]day notice prior to commencing this action. I have been [sic] seen such letter before. I never received such a letter." ECF No. 95-5 at ¶¶ 9-10. The Simons' initial motion papers also advanced the argument that plaintiff failed to comply with notice requirements of RPAPL§ 1304. See, e.g., ECF No. 97-4 at pp. 10-12.

## DISCUSSION

### A.  Foreclosure: Prima Facie Case

"In a New York mortgage foreclosure action, a plaintiff makes a prima facie case—with summary judgment appropriate if nothing else is shown—where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor." Wells Fargo Bank, N.A. v. Ullah, 2015 WL 3735230, at *4 (S.D.N.Y. June 15, 2015) (internal quotation and citation omitted) (collecting additional authorities). Accord Regency Sav. Bank, F.S.B. v. Merritt Park Lands

Assocs., 139 F.Supp.2d 462, 465 (S.D.N.Y. 2001) ("Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note."). "Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the Mortgagee has a presumptive right to foreclose which can only be overcome by an affirmative showing by the Mortgagor" of a lawful impediment to the foreclosure. Ulllah, 2015 WL 3735230 at *4 (internal quotation and citation omitted).

Plaintiff has established its prima facie entitlement to foreclose by presenting (i) the Mortgage signed by Nechuma, (ii) a copy of the Note signed by Nechuma along with the affidavits explaining the loss of the original, and (iii) Nechuma's concession of default under the Mortgage and Note, notwithstanding the dispute as to the date of default offered in her Amended 56.1 Counter-Statement, which the Court finds to be disingenuous and therefore insufficient to defeat summary judgment. See generally Fed. R. Civ. P. 56(a) ("[t]he court shall grant summary judgment if the movant shows that there is no *genuine* dispute as to any material fact and the movant is entitled to judgment as a matter of law") (emphasis added); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." (emphasis in original). As the Supreme Court has explained, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The dispute arising from the cryptic assertion in the Simons' Amended 56.1 Counter-Statement does not give a reasonable jury a basis to return a verdict in their favor. The Simons do not point to admissible evidence of an alternative date of default. Furthermore, apart from the apparent

strategic role of the asserted dispute (*i.e.*, the Simons' belief that it advances their statute of limitations defense), the suggestion of a years-earlier default date is against the Simons' own interest inasmuch as it exposes them to significantly heftier damages than plaintiff seeks.

## B.     The Simons' Defenses and Grounds for Relief

In opposing summary judgment, as well as in support of their cross-motion for summary judgment, the Simons argue that: (i) plaintiff lacks standing to bring this action because it does not have *actual* possession of the *original* Note; (ii) the action is time-barred, (iii) plaintiff failed to comply with the notice requirements of RPAPL § 1304; and (iv) this suit, as the third foreclosure action commenced under the Note and Mortgage against the Simons, is barred by C.P.L.R. § 3217(c).

Each of defendant's arguments fails as a matter of law.

### 1.     Standing

Once the mortgagee establishes its prima facie case, "[t]he burden of providing affirmative evidence of a defense generally rests with the defendant." Ullah, 2015 WL 3735230 at *4. The exception is the question of standing. Id. Accord Wells Fargo Bank, N.A. v. Rooney, 132 A.D.3d 980, 981 (2d Dep't 2015) ("Where. . . the plaintiff's standing to commence the action is placed in issue by a defendant, the plaintiff must ultimately establish its standing to be entitled to relief") (internal citation and quotation omitted) (collecting cases), lv. app. denied, 27 N.Y.3d 1147 (2016).

"[T]he note, and not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law." Aurora Loan Svcs., LLC, 25 N.Y.3d 355, 366 (2015). In practical terms, "[o]nce a note is transferred, the mortgage passes as an incident to the note." Id. (internal citation and quotation omitted). See generally 14A Carmody-Wait 2d § 92:79 (2012)

("[A]ny disparity between the holder of the note and the mortgagee of record does not stand as a bar to a foreclosure action because the mortgage is not the dispositive document of title as to the mortgage loan; the holder of the note is deemed the owner of the underlying mortgage loan with standing to foreclose" (internal quotations and citations omitted)).

In order to meet its burden of establishing its standing to bring this foreclosure action, plaintiff relies on Section 3-804 of the New York Uniform Commercial Code; that section, captioned "Lost, Destroyed or Stolen Instruments," provides, in pertinent part:

> The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms.

N.Y. U.C.C. § 3-804.

As the Official Comment to § 3-804 further explains,

> This section is new. It is intended to provide a method of recovery on instruments which are lost, destroyed or stolen. The plaintiff who claims to be the owner of such an instrument is not a holder as that term is defined in this Act, since he is not in possession of the paper, and he does not have the holder's prima facie right to recover . . . He must prove his case. He must establish the terms of the instrument and his ownership, and must account for its absence.

Id. What little decisional law is available on this section construes its plain language without remark. See, e.g., Marazzo v. Piccolo, 163 A.D.2d 369, 369 (2d Dep't 1990) ("Notwithstanding her failure to produce the original promissory notes, the defendant could still recover pursuant to UCC 3–804, which deals with lost, destroyed or stolen instruments and requires the requesting party to prove ownership of the notes, the circumstances of the loss and their terms" (citing, *inter alia*, 3 Anderson, Uniform Commercial Code, § 3–804)); Citibank, N.A. v. Benedict, 2000 WL 322785, at *5 (S.D.N.Y. Mar. 28, 2000) (reciting statutory language as standard). Accord Kwon v. Yun, 606 F. Supp.2d 344, 369 (S.D.N.Y. 2009) (same).

Plaintiff argues, and the Court agrees, that it has satisfied the three statutory requirements. First, the requisite "due proof of . . . ownership" of the lost instrument consists of Nechuma's admission that she executed the Note in favor of the original lender, plus the documentation establishing the chain of recorded, written assignments (from the initial lender to IndyMac to plaintiff). Second, the "facts which prevent [plaintiff's] production of the instrument" are set forth in the sworn, unrefuted affidavits of Wendy Traxler and JC San Pedro. Defendants argue that the Traxler and San Pedro affidavits are inadequate because they would be inadmissible at trial as hearsay, but that argument fails. Both Traxler and San Pedro lay the requisite admissibility foundation by attesting to the bank's regular practice of maintaining the mortgage-related documents that are the subject of the affidavits, and both further attest that they reviewed the relevant records first-hand. <u>See generally</u> Fed. R. Evid. 803(6)(d)(allowing testimony of custodian or other qualified witness as to records kept in the course of regularly conducted business activity). Finally, the terms of the Note are fully known and undisputed, as reflected in the copies of the Note that are part of the record.

Section 3-804, however, also requires the posting of security, in an amount at least double the face value of the instrument, to protect the obligor against loss resulting from the risk that others might also seek to recover on the missing instrument; it provides:

> The court shall require security, in an amount fixed by the court not less than twice the amount allegedly unpaid on the instrument, indemnifying the defendant, his heirs, personal representatives, successors and assigns against loss, including costs and expenses, by reason of further claims on the instrument, but this provision does not apply where an action is prosecuted or defended by the state or by a public officer in its behalf.

N.Y.U.C.C. § 308-4.

Despite the word "shall" in the statute, the Court concludes, based on the Official

Commentary and the balance of caselaw on the question, that the posting of security is not

required in this case.

The commentary explains both the rationale for the security requirement and the rationale

for dispensing with it, as follows:

> If the claimant testifies falsely, or if the instrument subsequently turns up in the
> hands of a holder in due course, the obligor may be subjected to double liability.
> The court is therefore authorized to require security indemnifying the obligor
> against loss by reason of such possibilities. There may be cases in which so much
> time has elapsed, or there is so little possible doubt as to the destruction of the
> instrument and its ownership that there is no good reason to require the security.
> The requirement is therefore not an absolute one, and the matter is left to the
> discretion of the court.

Id.

In Kwon, Judge Gerald Lynch weighed this commentary along with what he recognized

as the "inconsistent" case law on the question, see id., 606 F. Supp. 2d at 369 (collecting cases)

and concluded as follows:

> While the question is a close one, the Court concludes that, on balance, there is no
> reasonable ground for requiring security here. This litigation has been pending for
> more than four years. No other party has asserted any claim based on the Notes,
> and . . . there is no evidence that the Notes have been negotiated or transferred to
> any other party. Moreover, [the obligor] does not dispute that he borrowed the
> money, received the funds, and failed to repay.

Id. at 369-370. Accord Gade v. Islam, 2017 WL 3534921 at *6-8 (N.Y. Sup. Aug. 17, 2017),

2017 N.Y. Slip Op. 31752(U) (Trial Order) (following Kwon, declining to require §308-4

security where, inter alia, "the notes were issued in 2007, th[e] action has been pending since

2011, and there is little likelihood of a future claim") (collecting cases). But see Nat'l Shawmut

Bank of Boston v. Int'l Yarn Corp., 322 F. Supp. 116, 120 (S.D.N.Y. 1970) (requiring bank to

post security, reasoning that the New York version of UCC §3-804 differs from the UCC

provision itself in including the security requirement).

The reasoning of Kwon, the rationale of the Official Commentary to § 3-804, and the

weight of the authority reviewed in Kwon together guide the Court's adjudication of the security

question in this case, where there plainly appears to be no reasonable ground for requiring it. As

noted, this suit has been pending for more than four years and no competing claimant to the

moneys owed under the Note has surfaced. Indeed, the Note was executed *in November 1998*,

and the claimed loss of the original Note occurred *in or about April 1999*; in the ensuing twenty

years there has surfaced no reason to doubt that the original Note is, as plaintiff attests, lost.

Finally, Nechuma does not dispute that she incurred the debt in question or that she is in default.

Under these circumstances, the risk that Nechuma will face a future claim under the Note is for

all practical purposes non-existent.[11]

---

[11] In light of this ruling, the Court need not reach the alternative theory of standing plaintiff advances, namely, that its status as assignee suffices. See generally Wells Fargo Bank, N.A. v. Rooney, 132 A.D.3d 980, 981 (2d Dep't 2015 ) ("A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was *either the holder or assignee* of the underlying note" (emphasis added)).

Although the disjunctive proposition of Rooney is recited in numerous decisions holding that a mortgagee had standing, they do not support plaintiff's assignee-only claim here because in all but one of these cases, the plaintiff mortgagee actually possessed the note, see, e.g., CIT Bank (formerly, OneWest Bank) v. Howard, 2018 WL 3014815, at *7-8 (E.D.N.Y. June 15, 2018) (discussing "[a]s an independent ground for [ ] standing" the fact that the plaintiff "has also shown that it is the assignee of the Note," after first holding that "Plaintiff here has demonstrated that, at the time it commenced the action, it was both the *holder* and the *assignee* of the Note") (emphasis added); OneWest v. Goddard, 131 A.D.3d 1028, 1029 (2d Dep't 2015) (stating that "[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient," but finding standing because "plaintiff submitted sufficient evidence of physical delivery to it of the note").

The other group of decisions reciting the Rooney either-or standard likewise fails to support plaintiff's position here because they involve mortgagees who failed to satisfy either prong. See, e.g., U.S. Bank, N.A. v Collymore, 68 A.D.3d 752, 754 (2d Dep't 2009) (bank "did not submit

## 2.     The Statute of Limitations

"Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by *prima facie* proof that the limitations period has expired." U.S. Bank Trust, N.A., v. Adhami, 2019 WL 486086, at *4 (E.D.N.Y. Feb. 6, 2019) (internal quotation and citation omitted). The parties agree that that this foreclosure action is governed by New York's six-year statute of limitations. See generally N.Y. CPLR § 213[4] (six-year statute of limitations applies to actions "upon a mortgage of real property, or any interest therein").

In claiming that this action is time-barred, the Simons argue that the commencement of the 2006 Action on or about August 22, 2006 by plaintiff's predecessor-in-interest IndyMac was an acceleration of the mortgage debt that started the running of the six-year limitations clock, and that the limitations period therefore expired in August 2012, two years before this action was commenced. Plaintiff does not dispute that the commencement of the 2006 Action did indeed start the running of the limitations clock.[12] But plaintiff argues that IndyMac's voluntary

---

sufficient evidence to demonstrate its standing as the lawful holder or assignee of the subject note").

In response to the Court's request for supplemental submissions on the subject, plaintiff's counsel has unearthed only one decision holding that a plaintiff without physical possession of a note acquired standing to foreclose solely as assignee of the note. See Bayview Loan Servicing, LLC v. Warter, 56 Misc. 3d 1212(A) (N.Y. Sup. Ct. Essex Cty. 2017) (Plaintiff "admits that it does not have physical possession of the note, which was apparently lost," but standing established because "there was a written assignment of the note...Physical possession was therefore unnecessary.")

[12] It is well-established that "when a mortgage is payable in installments, causes of action accrue separately for each installment that is not paid, and the statute begins to run from the respective due date for each installment." Zucker v. HSBC Bank, USA, 2018 WL 2048880, at *5 (E.D.N.Y. May 2, 2018) (citing applicable New York caselaw). It is also clear that "if the mortgage debt is accelerated, the entire amount becomes due and subject to a single six-year statute of limitations," id., and that the commencement of a foreclosure action is treated as acceleration of the mortgage debt for this purpose. Id. at n.5.

discontinuance of the 2006 Action in June 2007, well within the six-year limitations period, was an effective revocation of the earlier acceleration of the mortgage (or a "deceleration," to borrow the term in some of the case law) that stopped the running of the limitations clock.

Whether a lender's voluntary discontinuance of a mortgage foreclosure action qualifies as revocation of the acceleration of the mortgage debt sufficient to stop the running of the limitations clock is a question that has received considerable, though inconsistent treatment. See generally Adhami, 2019 WL 486086, at *4-5 (comprehensively reviewing the caselaw); Zucker v. HSBC Bank, USA, 2018 WL 2048880, at *7 (E.D.N.Y. May 2, 2018) (same).

As this Court understands the caselaw, the pivotal concept in the jurisprudence emerges from a series of Appellate Division decisions recognizing, first, that the election to accelerate that occurs when a mortgagee moves for foreclosure *is* capable of being revoked, and second, that what is required to effect that revocation is "an affirmative act by the lender" during the limitations period that the foreclosure action triggered. See, e.g., Kashipour v. Wilmington Savings Fund Society, FSB, 144 A.D.3d 985, 987 (2d Dep't 2016) ("Although a lender may revoke its election to accelerate the mortgage, the dismissal of the prior foreclosure action by the court did not constitute an affirmative act by the lender revoking its election to accelerate, and the record is barren of any affirmative act of revocation occurring during the six-year limitations period subsequent to the initiation of the prior action"); Clayton Nat'l. v. Guldi, 307 A.D.2d 982, 982 (2d Dep't 2003) ("the dismissal of the [prior foreclosure] action for lack of personal jurisdiction did not constitute an affirmative act by the lender to revoke its election to accelerate"); EMC Mortg. Corp. v. Patella, 279 A.D.2d 604, 606 (2d Dep't 2001) ("Although a lender may revoke its election to accelerate the mortgage, the dismissal of the prior foreclosure action by the court did not constitute an affirmative act by the lender revoking its election to

accelerate, and the record is barren of any affirmative act of revocation occurring during the six-year [s]tatute of [l]imitations period subsequent to the initiation of the prior action; Federal Nat'l Mortg. Ass'n v. Mebane, 208 A.D.2d 892, 894 (2d Dep't 1994) (same; explaining that "[t]he prior foreclosure action was never withdrawn by the lender, but rather, dismissed *sua sponte* by the court. It cannot be said that a dismissal by the court constituted an affirmative act by the lender to revoke its election to accelerate").[13]

Plaintiff understandably reads these cases as supporting the proposition that, as occurred here with respect to the 2006 Action, when a lender voluntarily withdraws the foreclosure action, it has performed the "affirmative act" these cases require. Not surprisingly, as Judge Chen's compilation accurately reports, no fewer than ten of the thirteen New York trial courts that have considered the question agree that "[w]ithdrawing the prior foreclosure action is an affirmative act of revocation" that tolls the statute of limitations. Adhami, 2019 WL 486086, at *5, n. 7 (collecting cases). An example is Ditech Financial LLC v. Naidu, 2016 WL 6432721, 2016 N.Y. Slip Op. 32110(U) (N.Y. Sup. Queens Co. Sept. 9, 2016). Recognizing that a mortgage debt had been accelerated upon the commencement of a prior foreclosure action, the Court rejected the mortgagor's claim "that the voluntary discontinuance was not an affirmative act by the lender to revoke its election to accelerate." Id. at *2. The Court reasons as follows:

> . . .this Court finds that the stipulation discontinuing the prior action without prejudice acted as a deceleration of the debt. Although a court dismissal of a prior action for failure to prosecute, failure to appear at a conference, or lack of personal jurisdiction or the acceptance of additional payments after the acceleration do not constitute an act of revocation [citing Clayton and Mebane], here the plaintiff and defendant executed a stipulation providing that the action was dismissed without prejudice. When an action is discontinued, it is as if [it] had never been; everything done in the action is annulled and all prior orders in the case are nullified. Thus, the election to accelerate contained in the complaint was nullified when the stipulation was executed. Accordingly, the Court finds

---

[13] Kashipour cites only Clayton, Mebane and Patella. Clayton and Patella cite only Mebane.

that discontinuing the prior foreclosure action was an affirmative act of
revocation.

Id. (internal quotations and additional citations omitted).

This Court finds such reasoning sound, persuasive, and worthy of adoption here as the

fair and sensible rationale for rejecting as a matter of law the Simons' claim that this action is

time-barred.

The division in the jurisprudence, however, exposes what appears to be the intended

objective of the Simons' suggestion, in their Amended 56.1 Counter-Statement, that Nechuma

has been continuously in default since 2006 rather than responsible for a *subsequent* default in

2009—namely, to cast this action as an effort by plaintiff to re-institute a formerly discontinued

claim. But the record simply will not abide that notion, because it would necessarily mean that

plaintiff is guilty of a serious, highly-crafted fraud upon the Court: *to wit*, that the complaint's

allegation as to default date, the summary of plaintiff's records in the San Pedro and Edwards

affidavits, the content of the pre-foreclosure notice filed with the State of New York, and the

corresponding damage calculations in plaintiff's motion papers—*all* would have to be regarded

as complete fabrications.

As noted, the Court is aware of the lack of complete consensus in the case law but does

not find that any decision actually requires a different result here: as Judges Chen and Hurley

both observed, the exact question (whether a voluntary discontinuance is the requisite

decelerating "affirmative act") has simply not yet reached the New York Court of Appeals. See

Adhami, 2019 WL 48086, at *5, n.7; Zucker, 2018 WL 2048880, at * 7. Further, neither of the

two cases on which the Simons themselves specifically rely supports their position. The first,

21st Mortgage Corp. v. Ramjit, Index. 30744/2015 (N.Y. Sup. Rockland Co. June 12, 2015), is

inapposite because the prior foreclosure action there was not voluntarily discontinued by the

lender but instead dismissed by the court "due to improper and inconsistent pleadings." The second, U.S. Bank, N.A. v. Crockett, 55 Misc. 3d 1222(A), 2017 N.Y. Slip Op. 50741(U) (Sup. Ct. Kings. Co. June 5, 2017), is unpersuasive and perhaps incorrect. In ruling against the lender, the court noted that it was relying on the borrower's having "properly cited" U.S. Bank, NA v. Martin, 144 A.D.3d 891 (2d Dept 2016) "for the proposition that [a lender's] mere voluntary discontinuance of a foreclosure action does not constitute a revocation of an election to accelerate the mortgage debt." Crockett, 2017 N.Y. Slip Op. 50741 at *4. The cited Martin decision, however, does not state or imply support for such a proposition. Rather, Martin involves the different question of whether the lender's acceptance of partial payments from the borrower renewed the statute of limitations. See Martin, 144 A.D.3d at 892.

Finally, the Court finds that the treatment of the question in Adhami itself and in a New York Appellate Division on which it relies are consistent in principle with the result here, differing only in the procedural context in which the question was presented. See Adhami, 2019 WL 486086 at *6 (holding that the lender "has sufficiently alleged" at the 12(b)(6) stage that the voluntary discontinuance of a prior foreclosure action tolled the statute of limitations); NMNT Realty Corp. v. Knoxville 2012 Trust, 151 A.D.3d 1068 (2d Dep't 2017) (in the context of denying a borrower's motion for summary judgment in its favor, holding that a lender's voluntary discontinuance of a prior foreclosure action "raised a triable issue of fact . . as to whether it had committed the requisite 'affirmative act by the lender to revoke its election to accelerate" sufficient to defeat the motion) (internal quotations omitted) (citing, inter alia, Kashipour, Clayton, and Patella).

### 3. Notice

The Simons argue that this action should be dismissed because plaintiff did not comply with the 90-day pre-foreclosure notice requirements of RPAPL § 1304. As an initial matter, the Court notes that the Simons' initial 56.1 Counter-Statement does not dispute that they received the notices. But the memorandum of law filed with that statement did address the issue so the Court will accept for purposes of the motion and cross-motion that the Simons are genuinely pursuing this argument.

Nevertheless, the record plainly establishes plaintiff's compliance with the statutory notice requirement.

The requirements of RPAPL § 1304, of course, are mandatory. The statute states, in pertinent part, that, "at least ninety days before a lender [or] an assignee . . . commences legal action against the borrower.... [it] *shall* give notice to the borrower" in the form and content the statute describes "by registered or certified mail and also first-class mail to the last known address of the borrower, and if different, to the residence which is subject to the mortgage." Id. (emphasis added). Compliance with Section 1304 "is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." Deutsche Bank Nat'l Trust Co. v. Spanos, 102 A.D.3d 909, 910 (2d Dep't 2013).

The Simons' quarrel is not with the format and content requirements of Section 1304. Rather, they make the bold claim that the notices were never sent. The dispute on this point is the proverbial sound and fury signifying little. For some reason, plaintiff's summary judgment papers rely only on the Edwards Affidavit. As noted above, Edwards lays the requisite record-custodian foundation for the matters to which she attests, and further states that she has attached

the requisite proof of mailing, although no attachments made it on to the ECF filing. The Simons correctly note that Edwards only attests that each notice "was sent" but does not state that she herself sent them. They also argue that her general maintenance-of-records foundation "fails to provide proof of standard *office mailing* procedure" and "fails to provide independent proof of actual mailing," ECF 97-4 at p. 17 (emphasis added).

Even with the missing referenced exhibits the Court believes the Edwards Affidavit can fairly be read as establishing that plaintiff sent the required notice. But in any event, Exhibit E to the First San Pedro Affidavit, which neither plaintiff nor the Simons addresses here on summary judgment, disposes of this issue: it is a copy of the 90-day foreclosure notice with proof of first class and certified mailing to Nechuma. These materials create a presumption of receipt by the addressee. See Residential Holding Corp. v. Scottsdale Ins. Co., 286 A.D.2d 679, 680 (2d Dep't 2001) ("Generally, proof of proper mailing gives rise to a presumption that the item was received by the addressee. . . . The presumption may be created by either proof of actual mailing or proof of a standard office practice or procedure designed to ensure that items are properly addressed and mailed"). Cf. U.S. Bank Nat'l Ass'n v. Henry, 157 A.D.3d 839, 842 (2d Dep't Oct. 27, 2017) ("the affidavit of a vice president for loan documentation of the loan servicer was insufficient to establish that the notice was sent in the manner required by RPAPL 1304, as the loan servicer did not provide proof of a standard office mailing procedure *and provided no independent proof of the actual mailing*" (emphasis added)).

The Simons' self-serving, bare denial of receipt—coming from the same individuals who denied receipt of the summons and complaint in this action, despite the filing of proof of service—is proof of nothing, and not sufficient to rebut the presumption of receipt created by the materials in the record.

### 4.    CPLR § 3217(c)

Finally, the Simons argue that this action should be dismissed because it is the *third* attempt to foreclose against them.

The record shows that plaintiff did commence a foreclosure action against the Simons on about July 24, 2009, apparently on the basis of the February 2009 default (the same giving rise to this suit) in King's County Supreme Court (the "2009 Action"). ECF No. 97-7. The 2009 Action was discontinued in June 2014. See ECF No. 97-8. The relevant documents are a "Stipulation of Discontinuance" which states that the action is discontinued "without prejudice," id. at p. 2, and an affirmation of plaintiff's counsel requesting the discontinuance. Id. at pp. 4-5. The Stipulation was signed by plaintiff's and defendants' attorneys, so ordered by the Court on June 10, 2014, and entered June 19, 2014. Id. (As a point of reference, plaintiff commenced this action five months later, on November 11, 2014).

The Simons claim that under these facts, CPLR § 3217(c) bars this suit. But they are mistaken.

Section 3217(c) of the C.P.L.R. is titled "Voluntary Discontinuance." Subsection (c) of that section provides as follows:

> (c) Effect of discontinuance. Unless otherwise stated in the notice, stipulation or order of discontinuance, the discontinuance is without prejudice, *except that a discontinuance by means of notice operates as an adjudication on the merits if the party has once before discontinued by any method an action based on or including the same cause of action* in a court of any state or the United States (emphasis added).

"The underlying purpose of CPLR 3217(c) is to curb the use of the discontinuance device as a means of harassment and a source of unnecessary repetitive litigation." Rodrigues v. Samaras, 117 A.D.3d 1022, 1024 (2d Dep't 2014).

According to the Simons, the voluntary discontinuance of the 2009 Action should operate as an "adjudication on the merits" under Section 3217(c) because of the voluntary discontinuance of the 2006 Action (which qualifies as a discontinuance "by any method"). Without reaching the question of whether the 2006 Action is "an action based on or including the same cause of action" as the 2009 Action, the Simons' argument fails because the latter of the two discontinuances triggering 3217(c) consideration is a discontinuance "by means of notice," and the 2009 Action was discontinued by Stipulation. To be sure, a party's own caption is not controlling, see generally, CPLR 2104; Tortorello v. Carlin, 162 A.D.2d 691, 692 (2d Dep't 1990), but it is clear that the document discontinuing the 2009 Action was a "stipulation" rather than a "notice" for CPLR 3217(c) purposes because it was signed by both parties. See Tortorello, 162 A.D.2d at 202 (holding that a "purported . . 'stipulation' of discontinuance" was a "discontinuance by means of notice" under CPLR § 3217(c) because the document was served upon defendants but not signed by them and then filed in court with proof of service).[14]

## CONCLUSION

For all of the foregoing reasons, the Court grants the motion of plaintiff OneWest Bank, N.A. for summary judgment on its claim for foreclosure against defendant Nechuma Simon as sole obligor under the relevant instruments and denies in its entirety the cross-motion of

---

[14] CPLR § 2104, entitled "Stipulations," provides simply that:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered. With respect to stipulations of settlement and notwithstanding the form of the stipulation of settlement, the terms of such stipulation shall be filed by the defendant with the county clerk.

defendants Nechuma Simon and Aaron Simon for summary judgment. With respect to the other defendants named in the caption, none of whom has appeared, the Court agrees with the reasoning of Magistrate Pollack in the Report and Recommendation issued February 8, 2016 that there has been shown no factual or legal basis for entering a judgment against them at this time. See ECF No. at 9-10. Finally, given the passage of time since the matter was before Magistrate Pollack and the incompleteness of the parties' briefing on certain collateral issues, the Court respectfully refers the matter to Magistrate Vera Scanlon for an updated report and recommendation on (i) the appointing of a referee to conduct the sale of the Property under the procedures described in the plaintiff's Proposed Judgment of Foreclosure and Sale, and (ii) the questions of damages and attorneys' fees, if any.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 22, 2019

s/ Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge