LAW OFFICES OF MICHAEL B. WOLK, P.C.
155 East 55th Street, Suite 300B
New York, New York 10022
Tel: 917-238-0576
Fax: 973-535-1148
Email: michael.wolk@wolkgroup.com

May 24, 2021

***BY ELECTRONIC FILING/SERVICE***
The Honorable Raymond J. Dearier, U.S.D.J.
United States District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: Onewest Bank, N.A. (Plaintiff)
          -against-
    Nechuma Simon, Aaron Simon, et al. (Defendants)
    E.D.N.Y. Case No. 1:14-cv-06622-RJD-VMS
    ***Preliminary Substantive Response To Freedom Mortgage Decision***

Your Honor:

I am a sole practitioner. As of July 29, 2019, I became the new attorney for the Borrower Defendant Nechuma Simon and the Homeowner Defendant Aaron Simon ("Defendants") in this mortgage foreclosure action. Dkt. 105. On January 12, 2021, the Court issued an Order staying this case while the parties (and the Court) waited for a pending decision from the New York State Court of Appeals that was anticipated may resolve a conflict between different Appellate Division Departments on how to decide certain statute of limitations issues in the mortgage foreclosure context. Dkt. 122.

On March 8, 2021, pursuant to correspondence informing Your Honor that the New York State Court of Appeals had issued its pending decision (the "Freedom Mortgage Decision"),[1] the Court filed an Order to Show Cause directing Defendants to provide a written submission as to why Defendants, in response to the Freedom Mortgage Decision, maintain that their pending motion for reconsideration based on intervening appellate precedent [Dkt. 109] should be granted and, if so, whether summary judgment should be granted to Defendants on the parties' underlying summary judgment motions. Dkt. 124.

Due to family medical emergency issues,[2] the Court courteously extended the time for Defendants to provide a written submission through last Friday. Unfortunately, due to a recent breast cancer diagnosis, my wife has been required to have both a double

---

[1] *Freedom Mortgage Corp. v. Engel*, __ N.Y.3d __, 2021 WL 623869, 2021 N.Y. Slip. Op. 01090 (Feb. 18, 2021). For the convenience of the Court, a copy of the Freedom Mortgage Decision is attached hereto.

[2] My father was hospitalized in California, followed by my brother and I taking care of my father in California, and culminating in my father's recent passing late last month. In addition, my brother-in-law, who had been on a ventilator and in the hospital due to Covid for several months, was recently moved to an acute, long-term care facility in Nevada, where he was finally allowed to visit with family. As of today, my brother-in-law remains in that acute, long-term, care facility, while remaining unable to walk.

1

mastectomy, along with two additional infectious disease surgeries arising therefrom, and there are current complications necessitating my taking care of that situation.

As a result, I am not in a position right now to prepare an additional, longer, and more comprehensive formal legal brief about why the Freedom Mortgage Decision indicates that the Court should dismiss this action on time-bar grounds under the New York Statutes that govern the time-period for filing (or re-filing) a mortgage foreclosure action. However, I recognize and appreciate that this action has been pending since 2014 (even though I did not become new counsel until July 29, 2019) and, therefore, I respectfully submit this Preliminary Substantive Response now, for consideration by the Court, in response to the Freedom Mortgage Decision.

I am hopeful that my wife's situation will improve in about two weeks to such an extent that, if the Court wishes me to prepare a formal brief (or to respond to any questions the Court may have about any substantive issues addressed in this Preliminary Substantive Response), then I believe I should be in a position to prepare the necessary legal papers at such time.

   ***

Although the Freedom Mortgage Decision from the New York Court of Appeals holds that a lender's voluntary discontinuance of a mortgage foreclosure action operates to revoke a prior mortgage acceleration (absent a lender's statement to the contrary at the time of such voluntary discontinuance), ***the Freedom Mortgage Decision from the New York Court of Appeals also notably fails to decide whether a lender, as a threshold matter, has any contractually authorized right to revoke a prior mortgage acceleration*** (whether through a voluntary discontinuance of a mortgage foreclosure action or otherwise). See, e.g., the Concurring Opinion of Judge Wilson, pp. 8-9 in the Freedom Mortgage Decision:

> "I fully concur in the majority opinion[3] but write to make one caveat clear. ***We have not decided whether the notes and mortgages at issue here permit a lender to revoke an acceleration***. In three of the four cases before us, the borrowers did not contend that the noteholders lacked the contractual right to revoke an acceleration. . . In contrast, Mr. Engel argued at length [for the first time in the New York Court of Appeals] that the note and mortgage grant the noteholder the contractual right to accelerate the loan but lack any contractual authorization to revoke that election (absent consent of the borrower). However, Mr. Engel raised that issue for the first time on

---

[3] All seven judges on the New York Court of Appeals ruled that a lender's voluntary discontinuance of a mortgage foreclosure action operates to revoke a prior mortgage acceleration (absent a lender's statement to the contrary at the time of such voluntary discontinuance) - - ***provided that, among other things, a lender is contractually authorized, in the loan documents, to revoke a prior mortgage acceleration***. See Freedom Mortgage Decision.

Appeal. Thus, it was not properly preserved for our review [cits. om.].&rdquo; [emphasis added][4]

See also Chief Judge DiFore's Majority Opinion in the Freedom Mortgage Decision:

> "***Whether a foreclosure claim is timely cannot be ascertained without an understanding of the parties' respective rights and obligations under the operative contracts: the note and the mortgage. The noteholder's ability to foreclose on the property securing the debt depends on the language in these documents*** [cits. om.]. In the residential mortgage industry, the use of standardized instruments is common, as reflected here where the relevant terms of the operative agreements are alike, facilitating a general discussion of the operation of the statute of limitations with respect to claims arising from agreements of this nature. . . Determining whether, and when, a noteholder revoked an election to accelerate can be critical to determining whether a foreclosure action commenced more than six years after acceleration is time-barred. In opposition to motions to dismiss, *Freedom Mortgage* and *Ditech* asserted that their foreclosure actions were timely because they had revoked prior elections to accelerate by voluntarily withdrawing those actions. In response, ***the borrowers did not dispute the noteholders' right to revoke*** but contended that a voluntary discontinuance does not revoke an acceleration. . . ***This [Appellate Division] approach is both analytically unsound as a matter of contract law and unworkable from a practical standpoint. As is true with respect to the invocation of other contractual rights, either the noteholder's act constituted a valid revocation or it did not***; what occurred thereafter may shed some light on the parties' perception of the event but it cannot retroactively alter the character or efficacy of the prior act." [emphasis added]

---

[4] See also, e.g., p. 9 in the Freedom Mortgage Decision containing Judge Rivera's Opinion concurring with the majority opinion about the legal effect of a lender's voluntary discontinuance of a prior mortgage acceleration - - ***but also pointing out that the New York Court of Appeals had not ruled on whether a lender, as a threshold matter, has any contractually authorized right to revoke a prior mortgage acceleration (whether through a voluntary discontinuance of a mortgage foreclosure action or otherwise):***

"The question of whether the noteholders effectively revoked acceleration in *Freedom Mortgage Corp. v. Engel* and *Ditech Financial LLC v. Naidu* – an issue of material significance in both appeals – is another matter. As Judge Wilson notes, only the borrower in *Freedom Mortgage* has challenged the revocation on the ground that the noteholder does not have a contractual right to unilaterally revoke an acceleration (concurring op at 2). I agree with my colleague that because the borrower raises this challenge for the first time on appeal, it is unpreserved for our review [cit. om.]. ***Depending on whether and when we resolve that question, the rule adopted by the majority in these appeals may stand without further consideration, or be affirmed, modified, or discarded in the future***." [emphasis added]

The Court is respectfully referred to Defendants' prior court filings in this lawsuit, which are expressly incorporated herein by reference, for the governing appellate precedent that where, as here, Defendants have documented that this mortgage foreclosure action was filed more than six years after the lender's prior acceleration of the mortgage in a prior mortgage foreclosure action, (a) then Defendants have satisfied their *prima facie* case of showing that this mortgage foreclosure action is time-barred under the six year mortgage foreclosure statute of limitations in CPLR 213(4) and (b) **_the burden of proof shifts to the lender_** to demonstrate, through admissible evidence, that the statute of limitations has been tolled or extended (or otherwise does not apply).

The Court is also respectfully referred to Defendants' prior court filings (as well as Plaintiff's prior court filings) in this lawsuit, which are expressly incorporated herein by reference, for the language in Plaintiff's note and mortgage documenting that (a) **_there is no language in Plaintiff's note and mortgage that confers a contractual right on the lender to revoke a prior mortgage acceleration_** (in the absence of executed written consent from the borrower agreeing to such de-acceleration); (b) there is language in Plaintiff's note and mortgage conferring a contractual option **_solely on the borrower (but not on the lender)_** to de-accelerate a mortgage, prior to the issuance of a judgment of foreclosure and sale, solely upon the condition that the borrower, *inter alia*, first pays all of the previously accrued arrears to the lender;[5] and (c) no provision in Plaintiff's note

---

[5] See, e.g., *Bank of New York Mellon v. Dieudonne*, 171 A.D.3d 34, 39-40 (App. Div. 2d Dep't 2019), *lv. den*. 34 N.Y.3d 910 (2020) where the Appellate Division addressed standard contractual language in a residential mortgage solely providing a borrower (but not a lender) with a contractual option to de-accelerate a mortgage, prior to the issuance of a judgment of foreclosure and sale, solely upon the condition that a borrower, *inter alia*, first pays all of the previously accrued arrears to the lender:

"Contrary to [lender's] contention, the reinstatement provision in paragraph 19 of the mortgage did not prevent it from validly accelerating the mortgage debt. That provision effectively permits the borrower the contractual option to deaccelerate the mortgage when certain conditions are met. . . Here, paragraph 22 of the subject mortgage unequivocally sets forth the conditions that had to be satisfied before the [lender] was contractually entitled to exercise its option to accelerate the entire outstanding debt. The language in the mortgage makes clear that the [lender] is entitled to exercise its option to accelerate 'if all of the [ ] conditions. . . are met.' **_The reinstatement provision in paragraph 19 of the mortgage was not referenced in, or included among, those conditions listed in paragraph 22 [addressing the lender's contractual right to accelerate the mortgage debt]. Nor does the reinstatement provision in paragraph 19 of the mortgage include any language indicating that it serves as a condition precedent to the [lender's] right to accelerate the outstanding debt. To the contrary, the language of paragraph 19 indicates that the [lender's] right to accelerate the entire debt may be exercised before the [borrower's] rights under the reinstatement provision in paragraph 19 are exercised or extinguished_**. Accordingly, contrary to the [lender's] contention, the extinguishment of the [borrower's] contractual right to de-accelerate the maturity of the debt pursuant to the reinstatement provision in paragraph 19 of the mortgage was not a condition precedent to the [lender's] acceleration of the mortgage [cit. om.]. To the extent that [trial court] decisional law interpreting the same contractual language holds otherwise, it should not be followed [cits. om.]. Accordingly, we agree with the Supreme Court's determination granting the [borrower's] motion pursuant to CPLR 3211(a)(5) to dismiss the [mortgage foreclosure] complaint insofar as asserted against her as time-barred." [emphasis added]

See also, e.g., *Federal National Mortgage Association v. Tortora*, 188 A.D.3d 70, 75-76 (App. Div. 4th Dep't 2020) where the Appellate Division ruled: "**_Importantly, we conclude that the mortgage's reinstatement provision does not in any way affect or impede acceleration of the full mortgage debt. The reinstatement provision is not mentioned anywhere in the text of the mortgage's acceleration_**

and mortgage can be modified, changed, or amended except through a subsequent written instrument executed by the borrower.

Therefore, since there is no documentary evidence in the summary judgment record (or from any other stage of this case) indicating that Plaintiff, as a threshold matter, has any contractually authorized right to revoke a prior mortgage acceleration (whether through a voluntary discontinuance of a mortgage foreclosure action or otherwise), Plaintiff has failed to satisfy its burden of proof [see above] that the statute of limitations has been tolled or extended (or otherwise does not apply).  See, e.g., the New York Court of Appeals decision last year in *Chavez v. Occidental Chemical Corp.*, 35 N.Y.3d 492, 504-506 (2020), reaffirming its longstanding rulings that (a) ***no court has any power to toll or extend a statute of limitations except in strict accordance with a statutorily-authorized toll (or statutorily-authorized extension)*** and (b) in the absence of a statutorily-authorized toll/extension expressly permitting the time-period under a statute of limitations to be tolled or extended under the case-specific circumstances, then the Courts cannot allow the time-period in the statute of limitations to be tolled or extended:

> "Thus, in recognizing cross-jurisdictional [class[action] tolling
> under New York law, and answering the first certified question
> in the affirmative, we give effect to the legislative policy [statutorily]
> embodied in [CPLR] article 9 [on class actions]; indeed, as noted,
> a contrary holding would undermine the detailed class action statutory
> scheme created by the legislature.  In light of that [statutory] framework,
> we reject Occidental's argument that CPLR 201 prevents us from
> recognizing cross-jurisdictional [class action] tolling.
>
> ***CPLR 201 [statutorily] provides that '[a]n action. . . must be commenced within the time specified in this article unless a different time is [statutorily] prescribed by law or a shorter time is [voluntarily] prescribed by written agreement.  No court shall extend the time limited by law for the commencement of an action.'***
>
> To be sure, we have long recognized that 'the various tolling
> provisions to the Statute of Limitations are largely, if not
> exclusively, the product of legislative [statutory] design.'
> [cit. om.].  '***As a rule [however] time limitations created by
> Statute are not tolled in the absence of statutory authority
> because Courts may only construe provisions made by the
> Legislature [statutorily] creating exceptions or interruptions***

---

***provision***. . . Consistent with our conclusion that the reinstatement provision does not affect acceleration of the full mortgage debt [cit. om.], we reject [lender's] contention that the delayed accrual of a foreclosure claim was a trade-off contemplated by the interplay of the mortgage's acceleration and reinstatement provisions.") (emphasis added); *Wells Fargo Bank, N.A. v. Portu*, 179 A.D.3d 1204, 1207 (App. Div. 3d Dep't 2020) ("[E]ven after a foreclosure action has been commenced, the reinstatement clause allows a borrower to pay only the delinquency in order to have the action discontinued.  ***At no point in this matter did [borrower] exercise that contractual authority***.") (emphasis added).

5

***to the running of the time limited by Statute and [Courts] may
not themselves create such exceptions*** [cit. om.].

Our recognition of [class-action] tolling cross-jurisdictionally
does not run afoul of the statute or its purposes because it is
***predicated on the express legislative design*** of CPLR article 9.
***CPLR 201 makes clear that Courts do not have discretion to
excuse late filings by plaintiffs who slept on their rights*** [cits.
om.]. Cross-jurisdictional [class-action] tolling does not
implicate this concern because injured individuals who rely on a
representative class-action have not slept on their rights and such
tolling involves no exercise of judicial discretion [and] it turns
entirely upon the [statutorily-required] existence of a class-action.

Moreover, our statute of limitations doctrines are intended to
promote repose [cits. om.], not undermine other significant
statutory schemes Our recognition of [class-action] cross-
jurisdictional tolling harmonizes any tension between two
statutory schemes adopted by the legislature, CPLR articles
2 and 9, and is not an exercise of judicial discretion [cits. om.]."
[emphasis added][6]

---

[6] See also, e.g., the following, additional, statute of limitations decisions from the New York Court of Appeals: (a) *LuBonty v. U.S. Bank, N.A*., 34 N.Y.3d 250, 261 n. 8 (2019) ("Although [the statute of limitations] is subject to a variety of statutory tolls and extensions. . . [it] is not subject to a discretionary judicial extension."); (b) *Matter of King v. Chmielewski*, 76 N.Y.2d 182, 187 (1990) ("As a rule, however, time limitations created by statute are not tolled in the absence of statutory authority" and "[C]ourts may only construe provisions made by the legislature creating exceptions or interruptions to the running of the time limited by statute."); (c) *Dunning v. Dunning*, 300 N.Y. 341, 343 (1950) ("[W]e point out that no such [tolling] exception is found in article 2 of the Civil Practice Act, or elsewhere in our statutes, and the creation thereof is beyond the power of any court [cits. om.]."); (d) *Arnold v. Mayal Realty Co.,* 299 N.Y. 57, 60 (1949) ("A statute of limitations is not open to discretionary change by the courts, no matter how compelling the circumstances. . . and when given its intended effect such a statute [of limitations] is one of repose, and experience has shown that the 'occasional hardship is outweighed by the advantages of outlawing stale claims' [cit. om.]."); and (e) *Mark v. Mendels*, 249 N.Y. 356. 359 (1928) ("[The] Legislature determines under whatever circumstances the time limited by statute for commencing an action shall be suspended. The courts construe provisions made by the Legislature creating exceptions or interruptions to the running of the time limited by statute in which an action may be begun. They [courts] may not themselves create such exceptions [cit. om.]. General language in judicial opinions must be regarded as merely a gloss on the text of a statute [of limitations] under consideration, not as the formulation by judicial authority of a general rule. It is significant that in the statute [of limitations] which we must construe, the Legislature has not expressly stated that non-residence of a debtor at the time the cause of action accrued, or departure from the state thereafter, coupled with non-residence, shall postpone or interrupt the running of the statute of limitations.").

*Accord, e.g., Matter of McCarthy v. Zoning Bd. of App. of the Town of Niskayuna*, 283 A.D.3d 857, 858 (App. Div. 3d Dep't 2001) ("[I]n the absence of any statutory authority that would toll the statute of limitations, petitioner's [tolling] claim in this respect must be rejected [cit. om,.]"); *Matter of Crepeay v. Zoning Bd. of App. of the Village of Cambridge*, 195 A.D.3d 919, 921 (App. Div. 3d Dep't 1993) ("We find no reason in this case to create a toll where there is no statute to justify such action [cit. om.].").

Here, not only there is no documentary evidence in the summary judgment record (or from any other stage of this case) indicating that Plaintiff, as a threshold matter, has any contractually authorized right to revoke a prior mortgage acceleration (whether through a voluntary discontinuance of a mortgage foreclosure action or otherwise), Plaintiff has also failed to cite any statute that allows the statute of limitations for a mortgage foreclosure to be tolled or extended in a situation where a lender has voluntarily discontinued a prior mortgage foreclosure action.

CPLR 213(4) contains the six year statute of limitations for a mortgage foreclosure. CPLR 213(4) does not authorize the legislatively prescribed time period to be tolled or extended where a lender has voluntarily discontinued a prior mortgage foreclosure action.

GOL 17-105 is the tolling/extension statute addressing the circumstances under which the legislature has authorized the legislatively prescribed time period for a mortgage foreclosure to be tolled or extended. GOL 17-105 does not authorize the legislatively prescribed time period to be tolled or extended where a lender has voluntarily discontinued a prior mortgage foreclosure action.

Plaintiff has not cited a statute that authorizes the legislatively prescribed time period to be tolled or extended where a lender has voluntarily discontinued a prior mortgage foreclosure action.

   ***

Accordingly, based upon one or more of the reasons set forth above in this Preliminary Substantive Response, it is respectfully requested that the Court, in response to the recent Freedom Mortgage Decision from the New York Court of Appeals, (a) grant Defendants' pending motion for reconsideration based on intervening appellate precedent [Dkt. 109] and/or (b) grant summary judgment to Defendants, on the parties' underlying summary judgment motions, dismissing this action as time-barred under the statute of limitations governing a mortgage foreclosure action. Dkt. 124.

As set forth above, if the Court wishes me to prepare a formal brief (or to respond to any questions the Court may have about any substantive issues addressed in this Preliminary Substantive Response), then I am hopeful that my wife's breast-cancer situation will improve in about two weeks from now to an extent that I believe I should then be in a position, at such time, to prepare additional papers that may be needed.

Thank you for Your Honor's time and attention to this matter.

                Respectfully submitted,

                    /s/

                Michael B. Wolk

cc: Counsel of record (by efiling)